UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CALVIN N ROUSE,<br><br>                Plaintiff,<br>    v.<br><br>KIRIKO et al.,<br><br>                Defendants. | Case No. 3:21-cv-05386-DGE-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for April 28, 2023 |

This matter is before the Court on defendants filing of a motion for summary judgment. Dkt. 34. Plaintiff, who is proceeding *pro se,* brought this suit under 42 U.S.C. § 1983 alleging that defendants were deliberately indifferent to his serious medical need for his lower back pain in violation of his Eighth Amendment rights. Dkt. 5, Complaint. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1).

Having reviewing Defendants' motion (Dkt. 34), Plaintiff's response (Dkts. 41, 54, 55)[1], and the remaining record, the Court recommends that Defendants' motion for summary judgment should be GRANTED as to Plaintiff's claims for damages, on the

---

[1] On September 22, 2022, the Court granted Plaintiff until October 24, 2022 to respond to Defendants' motion for summary judgment. Dkt. 39. Plaintiff filed his response to the motion on October 19, 2022. Dkt. 41. It was only after this that Plaintiff claimed that he did not receive Defendants' motion for summary judgment. The Court, therefore, granted Plaintiff until November 14, 2022, to file supplemental briefing, if any, to his original response. Dkt. 44. The Court granted Plaintiff another extension on November 14, 2022. Dkt. 51. On December 12, 2022, Defendants filed a letter showing that their motion was resent to Plaintiff via US Mail on December 7, 2022. Dkt. 56.

REPORT AND RECOMMENDATION - 1

1  basis of qualified immunity. Plaintiff's claim for declaratory relief should also be
2  dismissed on summary judgment because he fails to show there is a genuine dispute of
3  material facts regarding deliberate indifference. In addition, the following set of Plaintiff's
4  claims should be dismissed for failure to exhaust administrative remedies: (1) claims
5  against Mr. Fultz, asserting Plaintiff was denied a medical mattress for his chronic back
6  pain and nerve damage; (2) claims against PA-C Ririe of deliberate indifference to
7  Plaintiff's medical needs by not providing physical therapy after his back surgery; (3)
8  claims against PA-C Ririe regarding a medical decision about Plaintiff's requests for an
9  MRI or other medical intervention for his complaints of back pain in 2019 through 2021;
10 and (4) claims against Dr. Kariko failing to provide adequate medical care for Plaintiff's
11 2020 diagnosis.

## BACKGROUND

I.  **Allegations of the Complaint**

Plaintiff is currently an inmate in the Washington State Penitentiary. Dkt. 38 (Notice of Change of Address). The allegations that gave rise to Plaintiff's complaint occurred while he was housed at Coyote Ridge Corrections Center. Plaintiff brings suit against DOC Chief Medical Officer Dr. Sara Kariko, Custody Unit Supervisor Micah Fultz, Physician Assistant-Certified (PA-C) Shane Ririe, and Advanced Registered Nurse Practitioner (RN) Jessica Pearl. *See* Dkt. 5.

Plaintiff brings a claim against Dr. Kariko for deliberate indifference. He alleges that as the director of the DOC Care Review Committee (CRC), Dr. Kariko was responsible for approving surgeries, diagnostics, evaluation and treatment, and she

REPORT AND RECOMMENDATION - 2

deprived Plaintiff of proper medical care when she unduly delayed the diagnosis and treatment of Plaintiff's back pain. *See* Dkt. 5 at ¶8-9.

Next, Plaintiff alleges that PA-C Ririe was deliberately indifferent to Plaintiff's serious medical needs by delaying bringing his case before the CRC for consideration. Plaintiff states that due to PA-C Ririe's delay, Plaintiff's condition worsened to the point where he also began losing control of his bowel movements. *See id.* at ¶11.

Plaintiff also brings an Eighth Amendment claim against RN Pearl who allegedly denied Plaintiff access to a wheelchair. *See id.* at ¶13-14.

Finally, Plaintiff alleges that Mr. Fultz improperly denied him a new mattress in violation of his Eighth Amendment rights. Defendant Fultz informed Plaintiff that he needed to place a kite requesting a new mattress, but because of Plaintiff's serious back condition, Plaintiff thought he was entitled to an exception and could get a new mattress sooner. *See id.* at ¶15.

Plaintiff seeks damages and a declaration that Defendants violated Plaintiff's rights under the Eighth Amendment. *See id.* at ¶23.

## II.  Summary Judgment Motion

Defendants seek summary judgment dismissal of all of Plaintiff's claims. They rely on the declarations filed by DOC Resolution Program Manager Carol Smith (Dkt. 35) and PA-C Shane Ririe (Dkt. 36). Plaintiff has filed an opposition, including various documents and evidence in response to Defendants' contentions. The parties' evidence is discussed in detail with the analysis of plaintiff's claims, below.

## DISCUSSION

## I.  Summary Judgment Standard

Summary judgment is supported "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.,* at 255. Yet the Court is not allowed to weigh evidence or decide credibility. *Anderson v. Liberty Lobby, Inc.*, at 255. If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

II.     **42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

In addition, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. . . . *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution.

A government official is entitled to qualified immunity from a suit for damages under Section 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A right is "clearly established" when existing precedent places the "statutory or constitutional question beyond debate" such that every reasonable officer would understand that the conduct violated that right. *Reichle*, 566 U.S. at 664.

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per

curiam). If there is a genuine issue of material fact concerning both: (1) Whether the defendant's conduct violated a constitutional right and (2) Whether it would be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

As discussed below, viewed in light most favorable to the Plaintiff, there is no genuine dispute of material facts regarding deliberate indifference and therefore qualified immunity applies regarding each claim for damages,

Likewise, Plaintiff's claims for declaratory relief should be dismissed on summary judgment because he fails to show there is a genuine dispute of material facts as to deliberate indifference.

### III. Eighth Amendment Legal Standard

A prisoner's Eighth Amendment claim based on an allegation of inadequate medical care only states a constitutional violation if mistreatment rises to the level of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer*, 511 U.S. at 837. Deliberate indifference requires a showing that the prison official was (1) actually aware of facts from which an inference

1 could be drawn that a substantial risk of harm exists; and (2) that the official actually

2 drew the inference; but (3) nevertheless disregarded the risk to the inmate's health. *Id.*,

3 511 U.S. at 837-38.

4   "If a [prison official] should have been aware of the risk, but was not, then the

5 [official] has not violated the Eighth Amendment, no matter how severe the risk."

6 *Toguchi v. Soon Hwang Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Deliberate

7 indifference requires more culpability than ordinary lack of due care for a prisoner's

8 health or medical malpractice. *Id*. at 835. Instead, the plaintiff must show a chosen

9 course of treatment was medically unacceptable under the circumstances and that this

10 course was chosen in conscious disregard of an excessive risk to plaintiff's health.

11 *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

12   "[A] complaint that a physician has been negligent in diagnosing or treating a

13 medical condition does not state a valid claim of medical mistreatment under the Eighth

14 Amendment. Medical malpractice does not become a constitutional violation merely

15 because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County*

16 *of Kern*, 45 F.3d 1310, 1316 (9th Cir.1995). Even gross negligence is insufficient to

17 establish deliberate indifference to serious medical needs. *See Wood v. Housewright*,

18 900 F.2d 1332, 1334 (9th Cir.1990). A prisoner's mere disagreement with diagnosis or

19 treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d

20 240, 242 (9th Cir.1989).

21   **A. Defendants' Evidence**

22    **i. Evaluations and Treatment**

On April 11, 2019, PA-C Ririe examined Plaintiff during a medical appointment. *See* Dkt. 36 (Declaration of Shane Ririe) at ¶5. During this appointment, PA-C Ririe and Plaintiff discussed the following: (1) Plaintiff's request to renew an HSR that had been previously issued for a wedge pillow due to moderate-to-severe gastritis and (2) Plaintiff's request for medication to treat nerve- related pain. *Id.*

PAC-Ririe decided not to renew the HSR wedge pillow request until he had a chance to consult with the facility medical director. *Id.* He did prescribe Plaintiff with Cymbalta and suggested that Plaintiff also use lidocaine ointment and ice to assist with his back pain. *Id.* PA-C Ririe ordered an x-ray for Plaintiff's lower pain, issued a prescription for lidocaine, and ordered an HSR for access to ice. *Id.* His x-ray indicated multilevel mild to moderate lumbar spine disc and facet degeneration. *Id.* at ¶11.

On April 30, 2019, Plaintiff had a follow up appointment with PA-C Ririe. Plaintiff again requested a wedge pillow; PA-C Ririe explained that Plaintiff did not meet the criteria to get one at that time. *Id.* at ¶6.

On June 17, 2019, PA-C Ririe saw Plaintiff for another medical appointment for Plaintiff's back pain. *Id.* at ¶8. Plaintiff stated he had not yet tried the lidocaine with capsaicin mix for his back pain. *Id.* Plaintiff also requested another joint injection. *Id.* He had received one previously and stated that it helped his pain considerably. *Id.* PA-C Ririe scheduled an appointment with PA-C Neau for consideration of the joint injection; on August 22, 2019, Plaintiff was administered the injection. *Id.* at ¶9.

On October 29, 2019, ARNP Pearl examined Plaintiff after continued complaints of back pain. *Id.* at ¶10. Based on her examination of Plaintiff's back and Plaintiff's access to a walker, she denied him a wheelchair. *Id.* On November 21, 2019, Plaintiff

REPORT AND RECOMMENDATION - 8

requested PA-C Ririe for an MRI to address his lower back pain. *Id.* at ¶11. After conducting an examination, PA-C Ririe put in a request for an orthopedic consultation with Dr. Sawyer. *Id.* Dr. Sawyer, upon reviewing Plaintiff's medical history, concluded that an MRI was not necessary at the time. *Id.*

On February 3, 2020, PA-C Ririe met with Plaintiff again to discuss his medication and pain. *Id.* at ¶12. Plaintiff stated that the medication was not working well. *Id.* PA-C Ririe communicated Dr. Sawyer's opinion that an MRI was unnecessary at the time but that they would continue to monitor Plaintiff's symptoms to consider whether an MRI would be appropriate at a later date. *Id.*

On July 20, 2020, PA-C Ririe provided Plaintiff with another injection. *Id.* at ¶13. He was also issued a wheelchair three days later after Plaintiff complained of pain in his left leg. *Id.* at ¶14.

On August 4, 2020, when PA-C Ririe met with Plaintiff, Plaintiff stated that he had been losing the ability to ambulate and stand -- along with bowel incontinence -- for two days. *Id.* at ¶15. Plaintiff was sitting on a walker at the time. PA-C Ririe and the facility medical director decided to consult with Dr. Sawyer and radiology for an MRI again. *Id.*

On August 20, 20202, PA-C Ririe ordered an x-ray for Plaintiff after he complained of pain in both sides of the lower lumbar spine and SI joints. *Id.* at ¶16. Based on the results, PA-C Ririe requested a consult for gabapentin with a neurology consult. *Id.* Plaintiff had an outpatient neurology consult on October 10, 2020. *Id.* at ¶18. Dr. Eriemeier examined Plaintiff, reviewed his MRI and medical history, and concluded that Plaintiff should not receive back surgery at that time. Rather, Dr. Eriemeier recommended increasing his gabapentin. *Id.*

REPORT AND RECOMMENDATION - 9

On February 18, 2021, Plaintiff complained of bowel incontinence to PA-C Ririe. PA-C Ririe brought in CNA Pence as a chaperone and conducted a rectal exam. *Id.* at ¶19. The results of this exam were normal. *Id.* Plaintiff also complained of continued back pain and stated that his medication was not treating his pain well. *Id.* PA-C Ririe requested a neurology consult for further guidance. *Id.*

On March 30, 2021, Plaintiff was seen for emergency complaints for back pain. *Id.* at ¶20. He was approved for back surgery at this time. *Id.* at ¶21. Plaintiff had three post-op examinations. *Id.* at ¶22.

On September 13, 2021, PA-C Ririe met with Plaintiff for follow up on his physical therapy session where he reported discomfort in his left sacroiliac (SI) joint. *Id.* at ¶23. Plaintiff was given another injection. *Id.* Plaintiff was transferred to his current facility on November 22, 2021. *Id.*

### ii. Administrative Grievances

The record shows the DOC's Offender Grievance/Resolution Program provides that inmates may file grievances/resolution requests on a wide range of issues relating to their incarceration. For example, inmates may file grievances challenging: 1) Department institution policies, rules, and procedures; 2) the application of such policies, rules, and procedures; 3) the lack of policies, rules, or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other inmates; 6) retaliation by staff for filing grievances; and 7) physical plant conditions. Attachment A at 15. Available resolutions include: 1) possible restitution of property or funds; 2) correction of records; 3) administrative actions; 4) agreement by Department officials to remedy an objectionable condition within a reasonable time; and

5) a change in a local or department policy or practice. *See* Dkt. 35 (Declaration of Carol Smith) at ¶4.

The grievance procedure consists of four levels of review:

Level 0 – Complaint or informal level. The grievance coordinator at the prison receives a written complaint from an offender on an issue about which the offender wishes to pursue a formal grievance. At this complaint level, the grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance. *Id.* at ¶6.

Level I – Grievances against policy, procedure, or other offenders. The local grievance coordinator is the respondent at this level. *Id.*

Level II – Appeal. Inmates may appeal Level I grievances to Level II. Staff conduct grievances are initiated at Level II. All appeals and initial grievances received at Level II are investigated and the prison superintendent is the respondent. *Id.*

Level III – Appeal. Inmates may appeal all Level II responses (except emergency grievances) to Department Headquarters in Tumwater, where they are reviewed. Administrators are the respondents. An inmate cannot appeal a Level III decision. *Id.* at 6-7.

On April 1, 2021, Plaintiff filed a grievance complaint asserting he was denied a medical mattress for his chronic back pain and nerve damage. *Id.* at ¶12; Exhibit E. Plaintiff was encouraged to work with custody staff to get a different mattress. Plaintiff appealed the grievance to a Level I; therefore, this grievance is not considered to be

exhausted. Plaintiff did not identify Mr. Fultz in this grievance; nor did Plaintiff file a separate grievance relating to the new mattress naming Mr. Fultz. *Id.* at ¶15.

On July 8, 2021, Plaintiff filed a grievance complaint asserting PA-C Ririe was being indifferent to his medical needs by not providing physical therapy after his back surgery. *Id.* at ¶13. The investigation revealed that Plaintiff was a no show for his scheduled physical therapy appointment on August 6, 2021. He was rescheduled and seen on September 13, 2021 and was provided home instructions and a pamphlet. Plaintiff was scheduled on October 16, 2021 and he refused treatment. He appealed the grievance to a Level I, therefore this grievance is not considered to be exhausted. Plaintiff did not file a grievance related to PA-C Ririe's medical decision making related to his requests for an MRI or other medical intervention for his complaints of back pain in 2019 through 2021. *Id.* at ¶16.

Finally, Plaintiff did not file a grievance related to complaints of Dr. Kariko failing to provide adequate medical care for his 2020 diagnosis. *Id.* at ¶14.

### B. Plaintiff's Evidence

Plaintiff asserts that defendants have been deliberately indifferent to his back pain despite that he has been complaining of this pain for three years. Dkt. 41 (Declaration of Plaintiff) at ¶7. He claims that when he was finally approved to see a neurologist in 2020, the diagnosis was that he had a "broken back." Dkt. 5 at ¶18. Plaintiff states that Dr. Kariko specifically acted with deliberate indifference when she concluded that Plaintiff did not need an MRI despite other health care providers "expressing the urgency of neuro-diagnosis." *Id.* at ¶8. *See also* Dkt. 41 at 8. Plaintiff ultimately received back surgery in 2021. *Id.* at 18.

## IV. Plaintiff Failed To Exhaust his Administrative Remedies Against Dr. Kariko, Mr. Fultz and PA-C Ririe

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), requires that prisoners seeking to bring Section 1983 claims must first exhaust their administrative remedies:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C § 1997e(a). Exhaustion is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001).

All "available" remedies must be exhausted. *Id.* Exhaustion must be proper, meaning the prisoner must complete the administrative review process in accordance with the applicable rules. *Woodford v. Ngo*, 548 U.S. 81, 92–95 (2006). Plaintiffs must file an appeal and exhaust all administrative appeals; they must also do so in a timely manner. *Id.* at 94. If a claim is not exhausted, it must be dismissed. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

Defendants bear the initial burden of showing there was an available administrative remedy and plaintiff did not exhaust that remedy. *Albino v. Baca*, 747 F.3d 1162, (9th Cir. 2014) (en banc). If that showing is made, the burden shifts to plaintiff, who must either demonstrate they exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172; *see also Ross v. Blake,* 578 U.S. 632, 643-644 (2016) (setting forth examples of when administrative remedies would be unavailable). "Exhaustion should

REPORT AND RECOMMENDATION - 13

be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

Defendants have established that DOC has an appeal process for lack of adequate medical care. *See* Dkt. 35 (Declaration of Carol Smith) at ¶4. They have also introduced evidence that Plaintiff has not done the following: (1) appealed his grievance asserting he was denied a medical mattress for his chronic back pain and nerve damage (*Id.* at ¶12; *see* Exh. E); (2) appealed his grievance complaint asserting PA-C S. Ririe acted indifferently to his medical needs by not providing physical therapy after his back surgery (*Id.* at ¶13; *see* Exh. F); (3) filed a grievance relating to complaints about Dr. Kariko failing to provide adequate medical care for his 2020 diagnosis (*Id.* at ¶14); (4) filed a grievance relating to his complaints of Mr. Fultz failing to provide Plaintiff with a new mattress (*Id.* at ¶15); and (5) filed a grievance relating to PA-C Ririe's medical decision related to his requests for an MRI or other medical intervention for his complaints of back pain in 2019 through 2021 (*Id.* at ¶16). Thus, Defendants have met their initial burden to establish that Plaintiff has not properly exhausted his administrative remedies for these specific claims.

The burden now shifts to Plaintiff who must either prove that he exhausted his available remedies or "show that there is something particular in his case that made the existing and generally available remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172). A remedy can be deemed unavailable if, for example, it "operates as a simple dead end," if it is "so opaque that it becomes . . . incapable of

use," or if "prison administrators thwart inmates from taking advantage of it." *Ross,* 578 U.S. at 643-644.

Plaintiff has come forward with no such evidence. *See* Dkt. 5; Dkts. 41, 54. Nor has plaintiff made a claim that filing or appealing grievances was unavailable to him. In short, the undisputed evidence demonstrates that Plaintiff has failed to properly exhaust his administrative remedies by timely pursuing all available grievance appeals. *Woodford*, 548 U.S. at 92–95.

Based on the foregoing, the Defendants' motion for summary judgment on these Eighth Amendment claims should be GRANTED for failure to exhaust his administrative remedies.

### V.     Plaintiff Has Failed to Show that Defendants Acted with Deliberate Indifference in Violation of the Eighth Amendment

Defendants further assert that Plaintiff's Eighth Amendment claims fail on the merits. Defendants do not seem to argue that Plaintiff's back condition and pain did not constitute a serious medical need. *See* Dkt. 34. The analysis therefore turns to the deliberate-indifference prong, and the initial question is whether Defendants knew of Plaintiff's serious medical need. *See Jett v. Penner*, 439 F.3d 1091, 1097 (9th Cir. 2006). Defendants do not argue that they were unaware of Plaintiff's back condition. Further, in light of the records documenting Plaintiff's condition, a reasonable inference can be drawn that Defendants knew of Plaintiff's medical need.

The Court next examines whether Defendants' response to Plaintiff's serious medical need constituted deliberate indifference. *See* Jett, 439 F.3d 1097. Plaintiff has not shown that the delay in providing the neurology consult and pain-related accommodations violated the Eighth Amendment. Plaintiff's evidence does not show

that the officials ignored his complaints. Rather, there is no genuine dispute that during the relevant period, Plaintiff was seen by various medical providers (including PA-C Ririe, ARNP Pearl, the facility medical director, an orthopedist and an independent neurologist) *at least* 18 times (Dkt. 36 at Exhs. A, G, K, and N); his x-ray showed no pathology and an examination showed his rectal tone in tact (*Id.* at Exhs. L, O); and he was first provided multiple oral medications, SI joint injections, and HSR accommodations to see if his pain could be treated without an invasive back surgery (*Id.* at ¶5, 6, 8, 12, 18, 23).

Further, once he was approved for surgery after an evaluation with the neurology clinic in March 2021, Plaintiff underwent surgery only a month later. *See id.* at Exh. P. Plaintiff received medical care and attention virtually every time he requested it and at no time did Defendants fail to provide treatment that was recommended. Rather, the record shows that Defendants continued to evaluate and reevaluate Plaintiff, refer him to outside consults, authorize modifications in his pain management medications, and provide accommodations as necessary. There is no evidence that Plaintiff's medical needs were responded to with deliberate indifference.

Plaintiff does not dispute that the steps taken by Defendants actually happened; instead, he seems to argue that Defendants should have taken a more aggressive approach to treating his back pain sooner. But this merely shows a difference of opinion between Plaintiff and his treating medical providers, which does not constitute an Eighth Amendment violation. *See Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir.1989). Plaintiff has failed to provide a genuine issue of material fact in regard to deliberate indifference as to how each defendant's acts or omissions affected his treatment.

REPORT AND RECOMMENDATION - 16

Because no genuine issues as to any material fact remain, summary judgment should be entered in favor of Defendants.

## CONCLUSION

Based on the above discussion, the undersigned recommends the Court grant Defendants' motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies. Plaintiff has not done the following: (1) appealed his grievance asserting he was denied a medical mattress for his chronic back pain and nerve damage; (2) appealed his grievance complaint asserting PA-C S. Ririe acted indifferently to his medical needs by not providing physical therapy after his back surgery; (3) filed a grievance relating to complaints about Dr. Kariko failing to provide adequate medical care for his 2020 diagnosis; (4) filed a grievance relating to his complaints of Mr. Fultz failing to provide Plaintiff with a new mattress; and (5) filed a grievance relating to PA-C Ririe's medical decision related to his requests for an MRI or other medical intervention for his complaints of back pain in 2019 through 2021. Plaintiff's claims should consequently be dismissed with prejudice.

With respect to Plaintiff's claims for damages, Defendants are entitled to qualified immunity because the first prong of the qualified immunity test is not satisfied. Finally, with respect to Plaintiff's claim that declaratory relief should be granted on his Eighth Amendment claims, these claims should also be dismissed with prejudice as to each Defendant because Plaintiff fails to show there is a genuine dispute of material facts concerning deliberate indifference. A proposed Order accompanies this Report and Recommendation.

The Court must also decide whether Plaintiff's *in forma pauperis* status should continue on appeal. *See* 28 U.S.C. §1915(a)(3) ("an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith"). The Court must determine whether appeal is frivolous or malicious, or whether it fails to state a claim on which relief may be granted. *See* 28 U.S.C. §1915(e)(2)(B)(i)&(ii).

While the Court was not persuaded on the merits of plaintiff's claim, there is no evidence that his appeal is frivolous or is taken in bad faith. Accordingly, the Court recommends that *in forma pauperis* status should continue on appeal.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on April 28, 2023, as noted in the caption.

Dated this 13th 13thday of April, 2023.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18